UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIKE USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> MACS SNEAKER CORPORATION doing business as SNEAKER CORNER, ARNOLD LARRY FINKELSTEIN, and CAROL ELLEN FINKELSTEIN, <br><br> Defendants. | Civ. No. 1:19-cv-2061 |

**COMPLAINT OF NIKE USA, INC. AGAINST MACS SNEAKER CORPORATION DOING BUSINESS AS SNEAKER CORNER, ARNOLD LARRY FINKELSTEIN, AND CAROL ELLEN FINKELSTEIN FOR COLLECTION OF DEBT, BREACH OF CONTRACT, ENFORCEMENT OF PERSONAL GUARANTY, INDEMNIFICATION AND UNJUST ENRICHMENT**

Plaintiff, Nike USA, Inc. ("Nike") sues Defendants Macs Sneaker Corporation, doing business as Sneaker Corner ("MSC"), Arnold Larry Finkelstein, and Carol Ellen Finkelstein (collectively, the "Defendants"), and states as follows:

### I.   BACKGROUND FACTS

1. Plaintiff, Nike USA, Inc. is an Oregon corporation whose principal business activity is the design, development, and marketing and selling of athletic footwear, apparel, equipment, accessories, and services. Nike USA, Inc. is organized and domiciled in Beaverton, Oregon and is a wholly owned subsidiary of Nike, Inc.

2. Defendant MSC is a retailer of athletic, footwear, apparel, and accessories. MSC is organized and domiciled in New York. According to the New York State Department of State

Division of Corporations, MSC's principal executive office is located at 160 East Rockaway Road in Hewlett, New York.

3. Defendant Arnold Larry Finkelstein is an individual who resided at 41 Clubside Drive in Woodmere, New York 11598 while doing business with Nike and who is currently residing at 9819 Bluefield Drive in Boynton Beach, Florida 33473.

4. Arnold Larry Finkelstein is the President of MSC.

5. Defendant Carol Ellen Finkelstein is an individual who resided at 41 Clubside Drive in Woodmere, New York 11598 while doing business with Nike and who is currently residing at 9819 Bluefield Drive in Boynton Beach, Florida 33473.

6. Carol Finkelstein is the Secretary of MSC.

7. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because Nike is a citizen of a different state than all of the Defendants, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

### A. The Account Agreement

8. From 1980 through 2018, Nike, Inc., Nike, or its predecessor BRS, Inc., sold sporting goods, shoes, and apparel to MSC.

9. Nike and MSC are parties to the Nike Account Application and Agreement (the "Account Agreement"). A copy of the Account Agreement is attached hereto as **Exhibit 1** and is incorporated herein by reference.

10. The Account Agreement is supported by consideration. In exchange for MSC's execution of the Account Agreement, *inter alia,* Nike agreed to permit MSC to sell Nike products in authorized retail locations in accordance with the terms and conditions of the Account Agreement.

11. As set forth in the Account Agreement, Nike approved two retail locations for MSC: (a) 2923 Ave I, Brooklyn, New York 11210; and (b) 3570 Nostrand Avenue, Brooklyn, New York 11229.

12. The Account Agreement requires MSC to pay Nike for all goods sold when due pursuant to Nike's invoice terms as set forth in paragraph 3 of the Account Agreement.

13. The Account Agreement requires MSC to dispute an invoice from Nike within thirty days after the date the invoice is due. If MSC does not dispute invoices within thirty days after the date the invoice is due, then, pursuant to the Account Agreement, the invoice will be deemed accepted and conclusively binding upon MSC.

14. The Account Agreement states that if MSC opens or acquires additional retail locations other than the retail locations approved on the Account Agreement, MSC must submit to Nike a new account application for each additional location.

15. The Account Agreement provides that MSC will pay such costs, collection agency fees, expenses, reasonable attorney fees (whether incurred prior to, at trial or on appeal) incurred by Nike in connection with the collection of any past due sums.

**B. The Personal Guaranties**

16. On August 6, 1980, Arnold Larry Finkelstein provided BRS, Inc., and its successors and assigns with a Guaranty of the debts of "Arnold Finkelstein DBA Macs Sneaker Corp" (the "1980 Personal Guaranty").

17. Nike is the successor to BRS, Inc.

18. The 1980 Personal Guaranty is absolute and unconditional.

19. The 1980 Personal Guaranty provides that it shall remain in effect until Arnold Larry Finkelstein gives written notice by certified mail with return receipt requested to BRS, Inc. of the termination of the 1980 Personal Guaranty.

20. The 1980 Personal Guaranty allows Nike to recover, in addition to the sums owed by MSC, principal, interest, additional charges and expenses, and reasonable attorneys' fees.

21. On October 12, 1989, Arnold Finkelstein provided Nike, Inc., and its successors and assigns with the Nike Personal Guaranty of the debts of "Macs Sneaker Corp." (the "1989 Personal Guaranty").

22. The 1989 Personal Guaranty is absolute and unconditional.

23. The 1989 Personal Guaranty provides that it shall remain in effect until Arnold Larry Finkelstein gives written notice by certified mail with return receipt requested to Nike of the termination of the 1989 Personal Guaranty.

24. The 1989 Personal Guaranty allows Nike to recover, in addition to the sums owed by MSC, principal, interest, additional charges and expenses, and reasonable attorneys' fees.

25. On or about March 11, 1998, Nike, Inc. formed Nike USA, Inc. and assigned to Nike USA, Inc. its accounts, contracts, orders, assets, guaranties, and employees related to Nike, Inc.'s United States operations (the "Assignment").

26. Thereafter Nike, Inc. notified its customers by letter in May 1998 that any NIKE applications and personal guaranties existing at the time of the Assignment would be assigned to Nike USA, Inc. on June 1, 1998. Nike, Inc. further notified is customers that the personal guaranties in existence at the time of the Assignment will guarantee payment for goods purchased on credit from Nike, Inc. and Nike USA, Inc.

27. Nike, Inc. assigned the 1986 Personal Guaranty, the 1988 Personal Guaranty, and the 1996 Personal Guaranty to Nike USA, Inc. on June 1, 1998.

28. On June 16, 1998, Arnold Larry Finkelstein and Carol Ellen Finkelstein (collectively, the "Finkelsteins") provided Nike with the Nike Personal Guaranty of the debts and obligations of MSC (the "1998 Personal Guaranty") to Nike in conjunction with the submission of the Nike Account Application and Agreement.  The 1998 Personal Guaranty, with the 1989 Personal Guaranty and the 1980 Personal Guaranty are referred to collectively herein as the "Personal Guaranties."  The Personal Guaranties are incorporated herein by reference and are attached hereto as **Exhibit 2**.

29. In the 1998 Personal Guaranty, "NIKE" refers to Nike USA, Inc. and its successors and assigns.

30. In the 1998 Personal Guaranty, the Finkelsteins are jointly and severally the "Guarantor."

31. In the 1998 Personal Guaranty, MSC is the "Buyer."

32. Nike and the Finkelsteins intended that MSC be the retailer identified as "Buyer" in the 1998 Personal Guaranty.

33. Pursuant to the introductory paragraph of the 1998 Personal Guaranty, the Finkelsteins "unconditionally, absolutely, and irrevocably guarantees and promises to pay to NIKE when due all indebtedness owing from Buyer to NIKE and to perform all of Buyer's other obligations to NIKE."

34. Pursuant to the introductory paragraph of the 1998 Personal Guaranty, "indebtedness is used in its most comprehensive sense and includes all debts, obligations and

liabilities of Buyer to NIKE of every nature, whether now in existence or arising at any time in the future, including principal, interest, charges, attorney fees, and costs."

35. Pursuant to the introductory paragraph of the 1998 Personal Guaranty, the 1998 Personal Guaranty, "is an absolute, continuing, unconditional and irrevocable Guaranty."

36. Pursuant to paragraph 3 of the 1998 Personal Guaranty, "Guarantor's obligations to NIKE under this Guaranty ("Guarantor's Obligations") are direct, primary, independent and unconditional."

37. Pursuant to paragraph 8 of the 1998 Personal Guaranty, "NIKE will be entitled to collect from Guarantor all of NIKE's costs, collection agency fees, expenses, attorney fees and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

38. Paragraph 5 of the 1998 Personal Guaranty provides that "Guarantor agrees to indemnify NIKE and hold NIKE harmless from all obligations, demands, claims, and liabilities asserted by any other party, and against all losses incurred or paid by NIKE in any way arising out of or in connection with NIKE's transactions with Buyer."

39. Paragraph 7 of the 1998 Personal Guaranty provides that the Guaranty, "will remain in effect until Guarantor gives NIKE written notice by certified mail of Guarantor's termination of this Guaranty."

40. The Personal Guaranties are supported by consideration. In exchange for the execution of the Personal Guaranties, *inter alia,* Nike or its predecessors agreed to do business with MSC in accordance with the terms and conditions of the Account Agreement and agreed to extend credit to MSC.

41. The Finkelsteins personally guaranteed payment to Nike of the debts of MSC.

42. The Finkelsteins have not terminated the Personal Guaranties.

## II. COUNT I – DEBT ACTION

Nike USA, Inc. v. MSC

43. Nike incorporates herein by reference paragraphs 1 through 42 above as if fully restated herein.

44. Nike issued invoices to MSC for goods and services Nike provided to MSC, and such invoices were due and payable to Nike more than thirty days prior to the filing of this Complaint.

45. Nike and MSC have worked to resolve invoice discrepancies, including, but not limited to, chargebacks, freight, and quantity issues. After resolving such issues, the amounts set forth in this Complaint remain due and payable to Nike by MSC.

46. As of the date of the filing of this Complaint, MSC is indebted to Nike in an amount no less than $277,189.62, exclusive of interest, fees and costs. A copy of the Account Statement showing the amount MSC and the Finkelsteins owe to Nike is attached hereto as **Exhibit 3.**

47. The foregoing amount has not been paid to Nike as of the filing of this Complaint, and MSC has not requested approval to return any product to Nike.

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against MSC in an amount no less than $277,189.62, plus all of Nike's costs, collection agency fees, expenses, and reasonable attorney fees (whether incurred prior to, at trial or on appeal) incurred by Nike in connection with Nike's collection efforts.

### III.     COUNT II – BREACH OF CONTRACT

Nike USA, Inc. v. MSC

48.    Nike incorporates herein by reference paragraphs 1 through 47 above as if fully restated herein.

49.    MSC and Nike are parties to the Account Agreement that requires MSC to pay Nike for goods and services provided to MSC.

50.    Nike provided goods and services to MSC, which was Nike's substantial performance pursuant to the Account Agreement.

51.    Nike has invoiced MSC for the amounts set forth in Count I of this Complaint.

52.    Nike has resolved all discrepancies and issues raised by MSC with respect to each invoice issued to MSC by Nike.

53.    Nonetheless, MSC has failed to pay Nike for the goods and services Nike has provided to MSC.

54.    MSC's failure to pay Nike is a breach of the Account Agreement.

55.    MSC's breach of the Account Agreement has caused Nike to suffer damages in an amount no less than $277,189.62.

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against MSC in an amount no less than $277,189.62, plus all of Nike's costs, collection agency fees, expenses, and reasonable attorney fees (whether incurred prior to, at trial or on appeal) incurred by Nike in connection with Nike's collection efforts.

## IV.     COUNT III – PERSONAL GUARANTY

Nike USA, Inc. v. Arnold Larry Finkelstein and Carol Ellen Finkelstein

56.     Nike incorporates herein by reference paragraphs 1 through 55 above as if fully restated herein.

57.     In the Personal Guaranties, Arnold Larry Finkelstein personally guaranteed payment of the debts of MSC to Nike in exchange for MSC's continued ability to conduct business with Nike and Nike's extension of credit to MSC.

58.     In the 1998 Personal Guaranty, the Finkelsteins personally guaranteed payment of the debts of MSC to Nike in exchange for MSC's continued ability to conduct business with Nike and Nike's extension of credit to MSC.

59.     Nike provided goods and services to MSC, and extended credit to MSC, which was Nike's substantial performance pursuant to the Personal Guaranties.

60.     Because of the 1980 and 1989 Personal Guaranties, Arnold Larry Finkelstein is personally obligated to Nike in an amount not less than $277,189.62 plus costs, collection agency fees, expenses, attorney fees and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

61.     Because of the 1998 Personal Guaranty, the Finkelsteins are personally obligated to Nike in an amount not less than $277,189.62 plus costs, collection agency fees, expenses, attorney fees and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

WHEREFORE, Nike requests that judgment be entered against the Finkelsteins in an amount no less than $277,189.62 plus all of Nike's costs, collection agency fees, expenses, attorney

fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

## V.   COUNT IV – INDEMNIFICATION

Nike USA, Inc. v. Arnold Larry Finkelstein and Carol Ellen Finkelstein

62. Nike incorporates herein by reference paragraphs 1 through 61 above as if fully restated herein.

63. The 1998 Personal Guaranty requires the Finkelsteins to indemnify and hold Nike harmless from all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in any way arising out of or in connection with Nike's transactions with MSC.

64. The Finkelsteins are required to indemnify Nike for all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in connection with the Complaint and with Nike's transactions with MSC.

WHEREFORE, Nike requests that judgment be entered against the Finkelsteins in an amount no less than $277,189.62, in addition to all losses incurred or paid by Nike in connection with the Complaint, and all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

## IN THE ALTERNATIVE

### VI. COUNT V - UNJUST ENRICHMENT

Nike USA, Inc. v. MSC

65. Nike incorporates herein by reference paragraphs 1 through 64 above as if fully restated herein.

66. At the request of MSC, Nike conferred a benefit upon MSC by providing the goods and services described herein and in the exhibits attached hereto.

67. MSC received and accepted the benefit of said goods and services provided by Nike.

68. At all times material hereto, MSC was aware that Nike was providing the aforesaid goods and services to MSC and that Nike expected to be paid for such.

69. At all times material hereto, MSC, with the aforesaid knowledge, permitted Nike to provide said goods and services and to incur damages.

70. At all times material hereto, MSC was unjustly enriched by retaining the benefit of receiving said goods and services without paying Nike fair and reasonable compensation.

71. Allowing MSC to retain the benefit of said goods and services without paying fair compensation would be unjust.

72. By reason of the aforesaid unjust enrichment of MSC at Nike's expense, an implied contract exists between Nike and MSC and MSC is obligated to pay Nike the *quantum meruit* value of the goods and services described herein and in the exhibits attached hereto in the amount of $277,189.62.

WHEREFORE, Nike requests that judgment be entered against MSC in an amount no less than $277,189.62, in addition to all losses incurred or paid by Nike in connection with the Complaint, and all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

Dated: April 8, 2019

Respectfully Submitted,

RYAN & CONLON, LLP

Elizabeth E. Malang, Esq.
2 Wall Street, Suite 710
New York, NY 10005
Phone: (212) 509-6009
Fax: (212) 509-6119
emalang@ryanconlon.com
        -and-
Anthony M. Saccullo, Esq.
Mary E. Augustine, Esq.
A.M. Saccullo Legal, LLC
27 Crimson King Drive
Bear, DE 19701
Phone: (302) 836-8877
Fax: (302) 836-8787
ams@saccullolegal.com

*Attorneys for Nike USA, Inc.*